**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION**

| | |
|---|---|
| Cynthia E. Bennett Wright,             ) | |
| )                                       | |
| Plaintiff,             ) | |
| )                                       | Civil Action No. 5:12-cv-2284-JMC |
| v.              ) | |
| )                                       | **ORDER AND OPINION** |
| Carolyn W. Colvin,             ) | |
| Acting Commissioner of the             ) | |
| Social Security Administration,        ) | |
| )                                       | |
| Defendant.             ) | |
| _____ ) | |

      This matter is before the court for review of the magistrate judge's Report and Recommendation ("Report") (ECF No. 29), filed August 29, 2013, regarding Plaintiff Cynthia E. Bennett Wright's ("Plaintiff") claim for Disability Insurance Benefits ("DIB"). On August 10, 2012, Plaintiff filed the instant action seeking judicial review of the final decision of the Acting Commissioner of the Social Security Administration ("the Acting Commissioner") pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) The magistrate judge recommends that the court affirm the Acting Commissioner's final decision. (ECF No. 29 at 1.)

      For the reasons set forth below, the court **REJECTS** the magistrate judge's Report. The Acting Commissioner's final decision is thereby **REVERSED** and this action is **REMANDED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

      The court concludes, upon its own careful review of the record, that the factual summation in the magistrate judge's Report is accurate, and the court adopts this summary as its own. However, a brief recitation of the background in this case is warranted.

1

Plaintiff filed an application for DIB on September 29, 2009, regarding a disability which she alleged began on February 1, 2008. (Tr. 24.)[1] The Acting Commissioner initially denied Plaintiff's application and denied it again upon reconsideration. *Id.* On October 26, 2010, Plaintiff had a hearing before an administrative law judge ("ALJ"). (*See* Tr. 39–66.) On November 5, 2010, the ALJ found that Plaintiff was not disabled. (Tr. 21–38.) The ALJ determined that Plaintiff had the following severe impairments: carpal tunnel syndrome, wrist pain, obesity, and bipolar disorder. (Tr. 26.) The ALJ concluded that Plaintiff had a residual functional capacity ("RFC") to perform light work except that she is limited to unskilled work involving tasks requiring no more than frequent handling and fingering. (Tr. 28.) As further discussed below, the central issue before the court is whether the ALJ properly evaluated Plaintiff's examining physician's opinion regarding her mental impairments in reaching his Step Three[2] determination and concluding that Plaintiff could perform unskilled work.

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) of the Social Security Act to obtain judicial review of the final decision of the Acting Commissioner, denying her claim for DIB. (ECF No. 1.) The magistrate judge reviewed Plaintiff's case and provided the Report to the court. (ECF No. 29.) In the Report, the magistrate judge found that the ALJ conducted a proper analysis at Step Three in determining that Plaintiff's mental impairments did not meet a listed impairment. *Id.* at 19–21. The magistrate judge further concluded that the ALJ

---

[1] The court cites to pages in the transcript of the administrative record and not to the electronic case filing page numbers.

[2] "At step three, the [ALJ] must determine whether the [plaintiff's] impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1….If the [plaintiff's] impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirements…, the [plaintiff] is disabled. If it does not, the analysis proceeds to the next step." (Tr. 25.)

2

appropriately considered the opinion of Plaintiff's examining physician Dr. C. Barton Saylor in establishing Plaintiff's RFC.  *Id.* at 23.

Plaintiff filed objections to the Report (ECF No. 38) to which the Acting Commissioner replied (ECF No. 39).

## STANDARD OF REVIEW

The magistrate judge's Report and Recommendation is made in accordance with 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02 for the District of South Carolina.  The magistrate judge makes only a recommendation to this court.  The recommendation has no presumptive weight.  The responsibility to make a final determination remains with this court.  *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976).  The court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objections are made, and the court may accept, reject, or modify, in whole or in part, the magistrate judge's recommendation or recommit the matter with instructions.  *See* 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one.  Section 405(g) of the Act provides, "the findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g).  "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964).  This standard precludes a *de novo* review of the factual circumstances that substitutes the court's findings for those of the Commissioner.  *See Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).  The court must uphold the Commissioner's decision as long as it is supported by substantial evidence.  *See Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).  "From this it does not follow, however, that the findings of the administrative agency are to be mechanically

3

accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative agency." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). "[T]he courts must not abdicate their responsibility to give careful scrutiny to the whole record to assure that there is a sound foundation for the [Commissioner's] findings, and that this conclusion is rational." *Vitek*, 438 F.2d at 1157–58.

## DISCUSSION

Plaintiff has filed extensive objections regarding the ALJ's consideration of examining physician Dr. Saylor's opinion, the ALJ's Step Three analysis in deciding whether Plaintiff's mental impairment of bipolar disorder medically equaled the criteria of Listing 12.04, and the ALJ's conclusion that Plaintiff could perform unskilled work. (*See* ECF No. 38). Given the comprehensiveness of Plaintiff's challenge to both this portion of the ALJ's decision and the Report's subsequent affirmance of it, the court will conduct a *de novo* review of that segment of the ALJ's decision.

Listing 12.04 is the listing for affective disorders like bipolar syndrome. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. For Plaintiff's case it is established that she has bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes. (*See* ECF No. 39 at 2) (evidencing the Acting Commissioner's concession that Plaintiff has met Paragraph A of Listing 12.04). Therefore, in order for Plaintiff to establish that her mental impairment met the required level of severity under the listing, she also needed to demonstrate that she satisfied two of the categories under Paragraph B.[3] *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. The categories under Paragraph B are as follows:

---

[3] Plaintiff would also meet the required level of severity if she satisfied the requirements of Paragraph C alone, regardless of how she faired with the other paragraphs. *See* 20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.04. However, Paragraph C is not at issue in this action.

4

(1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; and (4) repeated episodes of decompensation, each of extended duration.  *Id.*  If Plaintiff met the criteria of Listing 12.04, she would be considered disabled.  (Tr. 25.)

In his discussion of Plaintiff's bipolar disorder, the ALJ mentions that in February of 2008, records from Palmetto Behavior Health stated, among other observations, that Plaintiff had a history of poor judgment, difficulty sleeping, cycles of mood, and noncompliance with medications and appointments.  (Tr. 29.)  The ALJ also discussed records from Dorchester County Mental Health dated February 2008 through October 2010, which among other impressions, noted that Plaintiff had a "GAF score of 55, which, again denotes nondisabling symptoms."  *Id.*  The ALJ did not explicitly detail how he factored the records of Palmetto Behavior Health and Dorchester County Mental Health into his Paragraph B analysis or into his RFC conclusion that Plaintiff could perform unskilled work.

The ALJ also examined the opinion of Dr. Dan Vandivier, a physician who did not examine Plaintiff but instead conducted a review of the medical records in Plaintiff's case file. (Tr. 30, 625–656.)  Dr. Vandivier's report was dated July 14, 2008, and was therefore issued a little over five months after Plaintiff's alleged period of disability began.  (*See* Tr. 625–656.)  In his opinion, Dr. Vandivier marked a series of boxes on a form to indicate his opinion that Plaintiff satisfied the criteria for bipolar disorder (Tr. 628) and his conclusion that Plaintiff had only mild restriction of her daily activities, mild difficulties in maintaining social functioning, mild difficulties in maintaining concentration, persistence, or pace, and one or two episodes of decompensation for extended periods of time (Tr. 635).  From his review of Plaintiff's medical records, Dr. Vandivier concluded that Plaintiff could:

> A. Understand and remember detailed instructions and procedures requiring brief initial learning periods,
> B. Sustain concentration, effort and pace for detailed or familiar complex tasks requiring some independent judgment & involving minimal variations, & doing so at requisite schedules of work & breaks,
> C. Interact frequently as needed with supervisors and peers and others & sufficiently for task completion,
> D. Adapt adequately to situational conditions and changes with reasonable support & structure.

(Tr. 655.)

The ALJ accorded Dr. Vandivier's opinion "considerable weight" finding it "consistent with claimant's presentation upon routine examination and well-supported by the weight of the evidence of record." (Tr. 30.) As the ALJ offered no further explanation for how this opinion was consistent with Plaintiff's prior mental health examination or the other evidence in the record, the court finds it impossible to conduct a meaningful review of the ALJ's decision to accord the opinion considerable weight. The court's difficulty is especially troubling in light of the conflicting opinion of an examining physician, as discussed below, and given the ALJ's own acknowledgement that the opinions of State Disability Determination Services physicians, such as Dr. Vandivier, "do not as a general matter deserve as much weight as those of examining or treating physicians." *Id.*

The court finds that Dr. Vandivier's opinion standing alone is of little significance given that it necessarily excludes from consideration the majority of Plaintiff's alleged disability period[4], did not incorporate any substantive explanation, and was made without the benefit of personally examining Plaintiff. 20 C.F.R. § 404.1527(c)(3) ("[B]ecause nonexamining sources have no examining or treating relationship to you, the weight we will give their opinions will depend on the degree to which they provide supporting explanations for their opinions. We will

---

[4] Plaintiff alleges a disability period from February 1, 2008 through December 31, 2009. (Tr. 32.) Dr. Vandivier's report is dated July 14, 2008. (Tr. 625–656).

6

evaluate the degree to which these opinions consider all of the pertinent evidence in your claim[.]"); SSR 96-6P, 1996 WL 374180, at *2 (July 2, 1996) ("[T]he opinions of State agency medical and psychological consultants…can be given weight only insofar as they are supported by evidence in the case record[.]"); *C.f. Penny v. Sullivan*, 2 F.3d 953, 957 (9th Cir. 1993) ("Without the benefit of hearing [the plaintiff's] complaints of pain, we find [the physician's] opinion regarding [the plaintiff's] ability to perform 'sedentary work'…to be of very limited value.").

Lastly, the ALJ considered the opinion of Plaintiff's examining physician Dr. Saylor who examined Plaintiff in October 2010, at the request of Plaintiff's attorney. (Tr. 30, 892.) Dr. Saylor wrote a report based on collateral data and his own examination. (Tr. 892.) Dr. Saylor mentioned in his report that Plaintiff seemed "to have a history of minimizing her own symptomatology." (Tr. 895.) Additionally, Dr. Saylor completed an assessment of Plaintiff's mental impairments in which he checked a series of boxes to indicate his opinion that Plaintiff had marked difficulties in maintaining social functioning and marked difficulties in maintaining concentration, persistence, and pace.[5] (Tr. 900.) Dr. Saylor also opined that Plaintiff had been unable to sustain the demands of full-time work since February 2008. (Tr. 902.) Dr. Saylor stated that Plaintiff's prospect for returning to full-time work was poor but further commented that a "[r]eturn to part-time work in a low stress, structured and supportive environment is more realistic[.]" *Id.*

Dr. Saylor also wrote the following that was significant in the ALJ's consideration of his opinion:

---

[5] Dr. Saylor also indicated that Plaintiff had mild restrictions in activities of daily living and one or two episodes of decompensation for extended periods (Tr. 900), which was consistent with the impressions of Dr. Vandivier.

7

> From a psychiatric standpoint, [Plaintiff's] functioning appears to have stabilized on Risperdal; however, her adjustment appears fairly tenuous. She still appears to be fairly reliant on primitive denial to avoid dealing with real stressors in her life….When she has gone off medication in the past, her functioning has deteriorated. Although her medications have enabled her to stabilized [sic], preventing episodes of disruption where she became delusion [sic] and agitated, she remains fairly rigid and awkward and uncomfortable in social situations. She may be capable of progressing to doing part-time work in a low stress, structured environment.

(Tr. 896.)

The ALJ gave Dr. Saylor's opinion some weight but only to the extent consistent with an RFC of unskilled work. (Tr. 30.) The ALJ discounted Dr. Saylor's impression that Plaintiff had marked restrictions in social functioning and in concentration, persistence, or pace stating that such determinations were issues explicitly reserved to the Acting Commissioner. *Id.* The court finds the ALJ's rejection of Dr. Saylor's conclusions puzzling in light of the considerable weight the ALJ accorded Dr. Vandivier's opinion for these very same conclusions despite the absence of any accompanying explanation from Dr. Vandivier. Without additional explanation, the court is not satisfied that the ALJ had a sound basis for rejecting Dr. Saylor's opinion in this regard.

The ALJ also diminished the weight of Dr. Saylor's report because "Dr. Saylor was presumably compensated for his opinions." (Tr. 30.) The court joins a number of courts that find this type of reasoning, without more, insufficient to minimize the weight of a medical source's opinion. *See, e.g., Jordan v. Colvin*, 2013 WL 5317334, at *7 (D.S.C. Sept. 20, 2013) ("The court agrees with the Ninth and Tenth Circuits, and with another judge in this district, that the purpose for which medical reports are obtained does not provide legitimate basis for rejecting them and that an examining doctor's findings should be entitled to no less weight when the examination [is] procured by the [plaintiff] than when it is obtained by the Commissioner.")

8

(internal citation and quotation marks omitted); *see also Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995).

Additionally, the ALJ discredited Dr. Saylor's opinion because it was based primarily on Plaintiff's subjective report of symptoms. (Tr. 30.) The ALJ stated that Dr. Saylor "seemed to uncritically accept as true most, if not all, of what [Plaintiff] reported." *Id.* Yet, in the ALJ's own Paragraph B analysis he relies almost exclusively on Plaintiff's self-reporting to find that she did not have marked difficulties in the relevant areas. (*See* Tr. 27.) For instance, in finding Plaintiff had only moderate difficulties with social functioning, the ALJ relied on Plaintiff's testimony that she prefers being inside, avoids going out, and visits only with her family. *Id.* In determining that Plaintiff had only mild difficulties with maintaining concentration, persistence, or pace, the ALJ relied on Plaintiff's statements that, among other claims, she can pay bills, use a checkbook, read, watch television, manage stress well, and handle changes in routine. *Id.* Given the ALJ's apparently contradictory views on the reliability of Plaintiff's self-reporting, the court cannot conclude that the ALJ's determination to diminish Dr. Saylor's conclusions on this ground was reasonable.

Lastly, the ALJ stated that Dr. Saylor's Paragraph B opinions were inconsistent with his finding that Plaintiff's functioning had stabilized with treatment, referencing the paragraph included above. (Tr. 30.) However, as the court reads that paragraph, Dr. Saylor's conclusion was that Plaintiff would remain stable so long as she continued with treatment. Dr. Saylor indicated that Plaintiff's stability was tenuous given the likelihood that she would not stay on her medications. As one court has noted, the "failure to comply with treatment may represent a symptom of [bipolar disorder]." *Wake v. Comm'r of Soc. Sec.*, 461 F. App'x 608, 609 (9th Cir.

2011).  Therefore, Dr. Saylor's statements were logically consistent and the court finds this basis for diminishing Dr. Saylor's opinion is without merit.

In summation, the court finds the ALJ's discounting of Plaintiff's examining physician's opinion inadequately supported.  As a consequence, the court finds that the ALJ's Step Three determination that Plaintiff did not satisfy the requirements of Paragraph B has not been shown to be supported by substantial evidence.  Similarly, the court is unable to conclude that the ALJ's RFC of unskilled work is based on substantial evidence.  Therefore, the court remands this action for further consideration consistent with this order.

## CONCLUSION

For the foregoing reasons, the court **REJECTS** the magistrate judge's Report and Recommendation (ECF No. 29).  The court thereby **REVERSES AND REMANDS** the Acting Commissioner's final decision.

**IT IS SO ORDERED.**

*J. Michelle Childs*

United States District Court Judge

March 31, 2014
Columbia, South Carolina